# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: April 29, 2025

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | |
| ELIZABETH ANN BAKER, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 21-1869V |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Interim Attorneys' Fees and Costs. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * | | |

Paul Adrian Green, Law Office of Paul Green, Pasadena, CA, for Petitioner.
Eleanor Hanson, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS**[1]

On September 17, 2021, Elizabeth Ann Baker ("Petitioner") filed a petition in the National Vaccine Injury Program[2] alleging that she suffered autonomic neuropathy as a result of receiving an influenza ("flu") vaccine on September 17, 2018. Petition at Preamble (ECF No. 2).

On November 6, 2024, Petitioner filed a motion for interim attorneys' fees and costs, requesting compensation for the attorney who worked on her case and reimbursement of costs. Petitioner's Motion for Interim Attorneys' Fees and Costs ("Pet. Mot."), filed Nov. 6, 2024 (ECF

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, the undersigned is required post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act"). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

No. 80).  Respondent filed a response on November 8, 2024, stating that "Respondent defers to the Special Master to determine whether or not [P]etitioner has met the legal standard for an interim fees and costs award."  Respondent's Response to Pet. Mot. ("Resp. Response"), filed Nov. 8, 2024, at 2 (ECF No. 83).  Petitioner filed a reply on November 8, 2024, in support of her attorney and experts' hourly rate and maintaining her request for fees and costs.  Pet. Reply to Resp. Response, filed Nov. 8, 2024 (ECF No. 84).

On February 14, 2025, Petitioner filed an amended interim motion for interim attorneys' fees and costs.  Petitioner's Amended Motion for Attorneys' Fees and Costs ("Pet. Am. Mot."), filed Feb. 14, 2025 (ECF No. 98).  Petitioner's request can be summarized as follows:

**Attorneys' Fees** – $51,966.50
**Attorneys' Costs** – $29,977.98
**Petitioner's Costs** – $10,608.71

Petitioner thus requests a total of $92,553.19.  Respondent did not file a response.

This matter is now ripe for adjudication.  For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioner's motion and awards $83,229.86 in attorneys' fees and costs.

**I.    DISCUSSION**

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation.  § 15(e)(1).  When compensation is not awarded, the special master "may" award reasonable fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  Id.  If a special master has not yet determined entitlement, she may still award attorneys' fees and costs on an interim basis.  Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  Id.  Similarly, it is proper for a special master to award interim fees and costs "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim."  Shaw v. Sec'y of Health & Hum. Servs., 609 F.3d 1372, 1375 (Fed. Cir. 2010).

The claim appears at this point to have been brought in good faith and built on a reasonable basis.  Moreover, the undersigned finds that an award of interim attorneys' fees and costs is appropriate here where there are significant fees to be paid.

   **A.    Reasonable Attorneys' Fees**

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  Avera, 515 F.3d at 1349.  Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable

hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries."  Raymo v. Sec'y of Health & Hum. Servs., 129 Fed. Cl. 691, 703 (2016).

Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by Respondent and without providing Petitioner notice and opportunity to respond.  See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Saxton, 3 F.3d at 1522.

A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729(Fed. Cl. 2011).  Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended.  Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  Saxton, 3 F.3d at 1521.

1. **Hourly Rates**

Here, Petitioner requests a rate of $450.00 per hour for work performed in 2023, $470.00 per hour for work performed in 2024, and $490.00 per hour for work performed in 2025 by her attorney, Mr. Paul Green.

The undersigned finds the 2023 and 2024 requested rates to be reasonable and in accordance with what Mr. Green has previously been awarded for his Vaccine Program work.  See, e.g., Mangotich v. Sec'y of Health & Hum. Servs., No. 21-1458V, 2024 WL 5316648, at *3 (Fed. Cl. Spec. Mstr. July 26, 2024) (awarding 2023 and 2024 rates for Mr. Green); Olsen-Santoro v. Sec'y of Health & Hum. Servs., No. 20-948V, 2024 WL 752259, at *2 (Fed. Cl. Spec. Mstr. Jan. 23, 2024) (awarding Mr. Green's 2023 hourly rate).  The undersigned will therefore award the rates requested for 2023 and 2024.

Mr. Green's requested 2025 hourly rate has not previously been awarded. The undersigned finds Mr. Green's 2025 rate reasonable and within the OSM fee schedule[3] for attorneys with his experience. Thus, the undersigned will award the requested 2025 rate of $490.00 per hour.

### 2. Reduction of Billable Hours

The undersigned has reviewed the submitted billing entries and finds a reduction necessary for several reasons.

First, there are various billing entries for administrative tasks, including filing documents, preparing exhibits for filing, and downloading documents.[4] All of these administrative tasks were done by an attorney at an attorney rate and not at a paralegal rate. "While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal." Paul v. Sec'y of Health & Hum. Servs., No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023). "Clerical and secretarial tasks should not be billed at all, regardless of who performs them." Id.; see also Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); Sokol v. Sec'y of Health & Hum. Servs., No. 16-1631V, 2019 WL 4723836, at *3-4 (Fed. Cl. Spec. Mstr. Aug. 28, 2019) (determining billing for "scanning and numbering exhibits" is a clerical and administrative task that is not compensable).

Next, the undersigned finds some tasks were excessive. For example, on June 15, 2024, Mr. Green billed a total of 9.1 hours ($4,277.00) for preparing notices of filing and exhibits 31 through 45. He billed 4.6 hours ($2,162.00) for preparing exhibit 45 alone. Another example, on January 21, 2025, Mr. Green billed 3.9 hours ($1,911.00) for preparing notice of filings and exhibits 81-97. Mr. Green provides no explanation for the excessive amount of time spent on these tasks and additionally inappropriately billed these tasks at an attorney rate.

Finally, some of these billing entries contained block billing, making it impossible to discern how much time was spent on noncompensable tasks. "It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is

---

[3] The OSM fee schedule may be found at https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

[4] For example, see entries dated August 22, 2023 ("Filing petitioner's corrected PAR questionnaire," "Preparing and filing Petitioner's Exhibit list," "Preparing and filing Petitioner's Fourth Motion . . .," and "Preparing and filing Petitioner's Notice of Filing Exhibits 20 - 24, together with Exhibits 20 - 24, including formatting the documents as required by the Court (reduced size PDF files, text searchable, bates numbered, and labeled)"), October 23, 2023 (filing and preparing exhibits), December 21,2023 (same), May 6, 2024 (same), May 15, 2024 (same), July 17, 2024 (same), November 2, 2024 (downloading expert reports). This is not an exhaustive list.

reasonable." Mostovoy v. Sec'y of Health & Hum. Servs., No. 02-10V, 2016 WL 720969, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing Bell v. Sec'y of Health & Hum. Servs., 18 Cl. Ct. 751, 760 (1989)). For example, on November 2, 2024, Mr. Green billed 6.6 hours for "[d]ownloading and analyzing Respondent's three expert reports (Drs. William Hawes, Amy Arnold, and Brian Olshansky) and references cited therein (1082 pages)." While Mr. Green may bill for analyzing Respondent's expert report, downloading documents is a noncompensable task. Further, there are numerous instances where Mr. Green billed for both preparing and filing documents.

Therefore, given the number of issues, the undersigned finds a reduction of fees by 5% to be reasonable, resulting in a reduction of $2,598.33.[5]

### B.   Attorneys' Costs

Petitioner requests $29,977.98 for expenses incurred including $1,902.98 to cover miscellaneous costs and $28,075.00 for work performed by Dr. Omid Akbari and Dr. Joseph Jeret in excess of the retainers paid by Petitioner. Pet. Am. Mot. at 4; Petitioner's Statement of Petitioner's Counsel's Costs Incurred in Support of Pet. Am. Mot. ("Statement of Costs") at 1.

#### 1.   Miscellaneous Costs

Petitioner requests $1,902.98 for obtaining medical records, including the costs for serving subpoenas. Pet. Am. Mot. at 4; Statement of Costs at 1. Petitioner has provided adequate documentation supporting the cost of the medical records and subpoenas. See Pet. Exhibit ("Ex.") B at 4-29. Accordingly, the undesigned will award these costs in full.

#### 2.   Expert Fees

Petitioner requests $4,750.00 for 19.5 hours of work performed by neurologist Dr. Jeret at a rate of $500.00 per hour.[6] Statement of Costs at 1; Pet. Ex. B at 22. This rate has previously been found reasonable. See Nieves v. Sec'y of Health & Hum. Servs., No. 18-1602V, 2023 WL 7131801, at *4 (Fed. Cl. Spec. Mstr. Oct. 2, 2023); Bryce v. Sec'y of Health & Hum. Servs., No. 17-1832V, 2023 WL 5666165, at *7 (Fed. Cl. Spec. Mstr. July 18, 2023); Bristow v. Sec'y of Health & Hum. Servs., No. 19-457V, 2022 WL 17821111, at *6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (reducing Dr. Jeret's requested hourly rate from $550.00 per hour to $500.00 per hour). The undersigned finds the requested rate of $500.00 per hour reasonable and the amount of time spent on Dr. Jeret's two expert reports reasonable, and she will award these costs in full.

---

[5] $51,966.50 x 0.05 = $2,598.325. The undersigned will round up to $2,598.33.

[6] Dr. Jeret's total bill was for $9,750.00; however, Petitioner previously paid Dr. Jeret's retainer fee of $5,000.00 so Petitioner is requesting the remaining balance of $4,750.00. Pet. Am. Mot. at 4; Statement of Costs at 1; Pet. Ex. B at 22.

Petitioner requests $23,325.00 for work performed by immunologist Dr. Omid Akbari at a rate of $550.00 per hour.[7] Statement of Costs at 1; Pet. Ex. B at 2, 20-21. However, Dr. Akbari has consistently been awarded a rate of $500.00 per hour for his work in the Program. See Bristow, 2022 WL 17821111, at *5-6 (listing cases in which Dr. Akbari has been awarded $500.00 per hour); Walters v. Sec'y of Health & Hum. Servs., No. 15-1380V, 2022 WL 1077311 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (same). Moreover, the undersigned has previously found that $550.00 per hour is excessive for Dr. Akbari's work, and instead compensating him at $500.00 per hour. See, e.g, Carroll ex rel. J.W. v. Sec'y of Health & Hum. Servs., No. 19-1125V, 2023 WL 2771034, at *6 (Fed. Cl. Spec. Mstr. Apr. 4, 2023); Wolf v. Sec'y of Health & Hum. Servs., No. 17-308V, 2022 WL 10075190, at *3 (Fed. Cl. Spec. Mstr. Sept. 28, 2022); M.M. v. Sec'y of Health & Hum. Servs., No. 18-583V, 2022 WL 2070714, at *3 (Fed. Cl. Spec. Mstr. June 9, 2022); Price v. Sec'y of Health & Hum. Servs., No. 18-1472V, 2020 WL 3866890, at *3 (Fed. Cl. Spec. Mstr. June 15, 2020).

To support a higher rate, Petitioner cites to Mangotich, where Dr. Akabri was awarded an hourly rate of $550.00. Pet. Reply at 4; Mangotich, 2024 WL 5316648, at *4-5. However, the undersigned has maintained a $500.00 hourly rate in subsequent cases. See, e.g., Santiago v. Sec'y of Health & Hum. Servs., No. 21-1562V, 2024 WL 5321763, at *4 (Fed. Cl. Spec. Mstr. Dec. 18, 2024). Petitioner also relies on Dr. Akbari's overall medical experience, reputation in the immunology community, and as well as his experience in the Vaccine Program. Id. at 4-6. Petitioner further argues that an increased rate is appropriate given the increase in both inflation and costs in experts over the past six years. Id. at 7. The undersigned finds both arguments unpersuasive. As such, the undersigned finds that $500.00 per hour, as has been consistently awarded to Dr. Akbari, to be an appropriate hourly rate.[8] Accordingly, the amount to be awarded for Dr. Akbari will be reduced by $2,575.00 to conform with the $500.00 hourly rate.[9]

In this case, Dr. Akbari provided an initial 22-page expert report for which he billed 29 hours and a 19-page rebuttal expert report for which he billed 22.5 hours. The undersigned finds this amount of time to likely be excessive for a case that has not gone to hearing yet.

Other special masters have found Dr. Akbari's billing practices to be excessive or vague and accordingly reduced his billing by 20%. See, e.g., Nieves, 2023 WL 7131801, at *5 (finding Dr. Akbari's billing of 164.20 hours to constitute "an excessive amount of time for a case that did not go to hearing . . . [and] caution[ing] Dr. Akbari and counsel to endeavor to employ better billing practices in the future"); Reinhardt v. Sec'y of Health & Hum. Servs., No. 17-1257V, 2021 WL 2373818, at *4 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (finding Dr. Akbari's billing to be

---

[7] Dr. Akbari's total bill was for $28,325.00; however, Petitioner previously paid Dr. Akbari's retainer fee of $5,000.00 so Petitioner is requesting the remaining balance of $23,325.00. Pet. Am. Mot. at 4; Statement of Costs at 1; Pet. Ex. B at 2, 20-21.

[8] The undersigned previously expressed interest in reconsidering Dr. Akbari's rate in the future but will not do so here given the excessive time spent on this case before the case has proceeding to hearing. See Carroll, 2023 WL 2771034, at *6 n.18.

[9] 51.5 hours x ($550.00 – $500.00) = $2,575.00.

"well in excess of the time spent by other experts in cases of comparable complexity"). Other special masters have cautioned Dr. Akbari against excessive billing and encouraged him to "endeavor to reduce the number of hours billed henceforth." Bristow, 2022 WL 17821111, at *5 (finding that Dr. Akbari spent an "unusually large expenditure of time for a case that has not yet had a hearing"); see also Romero v. Sec'y of Health & Hum. Servs., No. 18-1625V, 2023 WL 2598014, at *5-6 (Fed. Cl. Spec. Mstr. Mar. 22, 2023) (finding that Dr. Akbari's billing of 109 hours to prepare two reports constituted a "large expenditure of time for a flu/GBS case that has not yet gone to hearing").

Here, the undersigned finds the 51.5 hours spent on two expert reports to be excessive billing by Dr. Akbari, especially in comparison to Petitioner's other expert Dr. Jeret who similarly produced two expert reports but billed only 19.5 hours. Accordingly, the undersigned will reduce Dr. Akbari's fee by 20%. This results in a further reduction of $4,150.00.[10]

### C. Petitioner's Costs

Petitioner requests $10,608.71 for costs personally incurred. Pet. Am. Mot. at 4. This amount is comprised of the $402.00 filing fee, $73.91 in costs for the release of Healthmark medical records, $132.80 for postage, and $10,000.00 for the retainers paid to Dr. Akbari and Dr. Jeret. The undersigned finds these costs reasonable and well-documented. See Pet. Ex. D. She will award the requested costs in full.

## II. CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and her attorney as follows:

| | |
|---|---:|
| Requested Attorneys' Fees: | $51,966.50 |
| Reduction of Attorneys' Fees: | - $2,598.33 |
| Awarded Attorneys' Fees: | $49,368.17 |
| | |
| Requested Attorneys' Costs: | $29,977.98 |
| Reduction of Attorneys' Costs: | - $6,725.00 |
| Awarded Attorneys' Costs: | $23,252.98 |
| | |
| Requested Petitioner's Costs: | $10,608.71 |
| Reduction of Petitioner's Costs: | - $0.00 |
| Awarded Petitioner's Costs: | $10,608.71 |
| | |
| **Total Interim Attorneys' Fees and Costs:** | **$83,229.86** |

**Accordingly, the undersigned awards:**

---

[10] ($23,325.00 – $2,575.00) x 0.2 = $4,150.00.

**Petitioner is awarded interim attorneys' fees and costs in the total amount of $83,229.86 (representing $72,621.15 for Petitioner's attorneys' fees and costs and $10,608.71 for Petitioner's personally incurred costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[11]

**IT IS SO ORDERED.**

/s/ Nora Beth Dorsey
Nora Beth Dorsey
Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.